## Richmond

DEWEY RUSSELL LOVE v. COMMONWEALTH OF VIRGINIA.

November 29, 1971.

Record No. 7732.

Present, All the Justices.

*Harvey S. Lutins*, for plaintiff in error.

*William P. Robinson, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Dewey Russell Love seeks to reverse a judgment of the court below sentencing him to serve six months in jail for unlawfully resisting arrest. He questions the sufficiency of the evidence to sustain his conviction.

On June 4, 1970 Virginia State Troopers D. L. Fisher and J. D. McMurray went to the residence of Mary Boothe, mother of defendant, in Bedford County, to arrest Love on a criminal warrant charging him with assault and battery.

At the time the officers approached the Boothe residence, Mrs. Love, wife of defendant, was in the backyard of the property. Mr. Boothe, defendant's stepfather, was sitting on the front porch. Both

Mr. Boothe and Mrs. Love went into the house and advised defendant of the presence of the state police. Defendant was then on the back porch, having allegedly just come in from squirrel hunting.

Having observed the movements of Mr. Boothe and Mrs. Love, Trooper Fisher went to the right corner of the house, and McMurray stationed himself behind a tree. Fisher heard a noise on the inside of the dwelling "which appeared to be the sound made by pumping a pump action shotgun for the purpose of loading a shell into the chamber". McMurray said it "sounded to me like a rifle being loaded". A moment later defendant came through the house to the front porch. He was armed with a 20-gauge, 3 shot, bolt action shotgun.

Trooper Fisher advised Love that he "had a warrant for his arrest and asked him to put the shotgun down". Love demanded that Fisher read the warrant. The officer again told Love to put the shotgun down and Love repeated his demand that the warrant be read.

McMurray testified that when Love entered the porch he demanded that the officer read the warrant, and then proceeded across the porch to a chair, carrying the shotgun from the waist pointed in a forward and downward direction; and that he sat down in the chair holding the weapon at his waist pointing in a forward position and approximately level. Fisher was still to the right of the house and at a point where he could not then see Love. McMurray was still standing behind a tree in the front yard.

Fisher drew his revolver and approached the right front corner of the house. The officer again told Love to put down the gun. Love kept the shotgun across his lap keeping his right hand on the narrow portion of the stock and his left hand on the barrel with the muzzle pointing in the general direction from which Fisher was approaching. Love had been advised that he was under arrest. Fisher came forward to the front portion of the house with his service revolver in his "fully extended right hand and, coming into full view of Love, pointed the revolver directly at his face between his eyes and warned him not to move a muscle". The officer walked up the steps and on the porch and with force pulled the shotgun from the grasp of Love. McMurray stated that after Fisher had walked up several steps he "grabbed the gun out of Love's hands". He said that there was no struggle with Love holding onto the gun, but that Fisher did have to jerk the gun from Love. The arrest was then effected, the defendant searched and taken to the Bedford County jail.

The defendant's version of what occurred is that he had been out hunting squirrels and foxes and was using his stepfather's 20-gauge shotgun for that purpose; that he had come from the field into the house to get some water and had the gun in his hands; and that he was on the back porch of the residence when he was advised by his wife of the presence of the state police. He stated that he walked to the rear part of the front porch, threw the bolt closed and put the safety on; that he walked up to the edge of the porch; and that the trooper who was at the side of the house told him that he had a warrant for his arrest. He admits that he asked the officer to read the warrant and that the officer demanded that he put the gun down.

Love said that he then sat down in the chair at the front edge of the porch and put the gun across his lap. He said the trooper told him "Don't you move a muscle" and that he did not, remaining perfectly still with "my hands on both ends of the shotgun, not near the trigger, while sitting down and Trooper Fisher came around the side with his pistol in his hand stretched out pointing right at my face". Defendant said he was not trying to hold onto the gun when it was taken from him by Fisher; that the officer had told him not to move; and that "I was not about to move. I didn't move a muscle. . . . "

Essentially Love's position is that there is no evidence clearly indicating that he intended to prevent the troopers from performing their duty, nor is there any evidence that the troopers were intimidated, impeded or resisted. Defendant says the Commonwealth was required to prove that he specifically intended to resist the arrest and argues that such evidence is lacking here and that his testimony is consistent with his innocence.

In *Jones* v. *Commonwealth*, 141 Va. 471, 478-79, 126 S. E. 74, 77 (1925), this court said:

> " 'To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to "obstruct" ordinarily implies opposition or resistance by direct action and forcible or threatened means. It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed.' "

The setting and circumstances under which Officers Fisher and McMurray sought to arrest Love are important here. Both officers were in uniform and were operating a plainly marked state police vehicle at the time of the attempted arrest. They were recognized by members of Love's family as police officers, and he was advised of their identity. The officers were armed with a lawful arrest warrant and were acting in the performance of their duties. The warrant charged the defendant, who had previously been convicted of a felony, with the crime of assault and battery. When the officers approached defendant's residence they observed that defendant's wife and stepfather immediately entered the house. The noise that they heard on the inside of the building was correctly identified by them as having been made by someone "throwing the bolt on a bolt action gun". It was not unreasonable that they should suspect that a gun was being loaded, and that Love was arming himself.

The defendant says that what he did was throw "the bolt closed and put the safety on". Love is apparently an experienced huntsman. He was not hunting at the time but was inside a dwelling occupied by at least three other people, and normally would not be carrying a loaded gun with the "safety off". Notwithstanding the defendant knew of the presence of the officers, and had ample time in which to put the gun down on the back porch or in any room through which he passed en route to the front porch, this was not done. There was no reason to carry the gun to the porch or to approach the front of the house with caution, or to be prepared to defend himself.

While police officers have an affirmative duty to inform an accused of the charges against him, it is not necessary that they so advise him until after he has submitted peaceably to the arrest. *Randolph* v. *Commonwealth*, 145 Va. 883, 134 S. E. 544 (1926); *Crosswhite* v. *Barnes*, 139 Va. 471, 124 S. E. 242 (1924); *Bourne* v. *Richardson*, 133 Va. 441, 113 S. E. 893 (1922). The defendant's demands here that the warrant be read to him were unreasonable demands for they were made at a time when he was in possession of a loaded shotgun and before he had submitted to arrest. They were indicative of his attitude and demeanor.

When the officers advised Love that they had a warrant for his arrest it was his duty to submit peacefully and lay down, or otherwise discard, his weapon. This the defendant did not do. At the time the officers demanded that Love disarm himself they were in a place of safety, Fisher being to the side of the house and McMurray being

behind a tree. Instead of putting his gun down so that the officers would know that he did not intend to resist arrest, he seated himself in a chair with both hands holding the gun in a ready position where it could be used with minimum effort on his part. Love was protected on three sides by an enclosed porch which opened only to the front, and the officers could approach him only from that direction. It was under these circumstances that McMurray found it necessary to remain behind the protection of a tree while Fisher approached the defendant with a drawn revolver pointed at Love's head after advising defendant "not to move a muscle".

The trial court found from the evidence that the actions of defendant were such as to constitute resisting a lawful arrest by an officer. We cannot say that its judgment is plainly wrong, or without evidence to support it.

The law does not contemplate that a police officer in making a lawful arrest shall be required to subdue forceably and physically the person sought to be arrested, or be placed in such a position by the actions of such person that he will have to threaten to kill him.

It is manifest from the record in this case that both Fisher and McMurray were apprehensive that Love would do them some physical harm, and concluded that his refusal to discard the shotgun was because of an intention to resist arrest. By his actions Love not only caused the officers to be apprehensive, and impeded and obstructed an orderly arrest, but he thereby endangered his own life and placed Officer Fisher in a position that could have resulted in a homicide by him had Love, either voluntarily or involuntarily, moved while the officer was approaching to disarm and take him in custody.

The judgment of the lower court is.

*Affirmed.*