**Richmond**

IRA TERRELL FOOTE, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0484-89-3

Decided September 18, 1990

62

Counsel

David E. Boone (Andrea C. Long; Boone, Carpenter, Beale and Cosby, on brief), for appellant.

Richard A. Conway, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

COLE, J.—The appellant, Ira Terrell Foote, Jr., was convicted in a bench trial of attempted murder and use of a firearm in such attempt. Although the defendant has raised several issues on appeal, the issue whether his claim of self-defense was sufficient is dispositive of the case. Finding that the claim of self-defense was sufficient, we reverse the convictions.

Shortly after noon on April 13, 1988, Keith Dunagan, a Wythe County Deputy Sheriff, was eating lunch at his home when he observed a blue Toyota pickup truck drive past his house. The truck bore out-of-state tags and was driven by a man wearing camouflage attire. Dunagan lived in a secluded area on a dirt road that was open to the public but not state-maintained. About

twenty minutes later, thinking that perhaps the driver was hunting turkey out of season, Dunagan decided to check the vehicle, which had not returned, and to give him a citation if the driver was hunting at that time. Dunagan was wearing jeans, a rugby shirt and tennis shoes and was driving an unmarked Chevrolet Cavalier equipped with a police radio. Before Dunagan reached the end of the road, however, he met the pickup truck coming out. Dunagan ran the tag number of the vehicle and was informed by the police dispatcher that "he is a wanted person, use caution, use caution . . . he's a Rambo-type subject and has guns in his vehicle." Dunagan requested that a marked police unit be sent to his location and informed the dispatcher that he would follow the vehicle until assistance arrived.

The pickup truck turned onto another dirt road which led back up the mountain toward an old abandoned cabin. Dunagan started to follow the truck up that road when he saw it starting to head back out. Dunagan stopped his vehicle on the road facing south as Foote came down the hill facing north and pulled up beside Dunagan's vehicle. With drivers' windows of both vehicles rolled down, Foote asked Dunagan whether he owned property in the area, because he was looking for a piece of property for sale. Unable to see Foote's hands, which were below Dunagan's level of vision, Dunagan replied that he was a local property owner. When Foote crossed his hands on top of his steering wheel where Dunagan could plainly see them, Dunagan got out of his vehicle, trained his nine millimeter pistol on Foote with both hands, and told Foote "that [he] was a deputy sheriff with the Wythe County Sheriff's Department, that [he] had information that the driver of that vehicle was wanted and that [he] would have to see some I.D."

Foote refused to provide identification, at which point Dunagan reached inside the truck and attempted to turn the truck's motor off and take the key from the ignition. Foote pulled Dunagan's hand off the key and restarted the vehicle. At the same time, Dunagan tried to pull Foote from the vehicle but lost his grip. As Foote drove off, he leaned out the window and shouted, "[I]f you want to get me you better go get four or five more of your buddies." He traveled north on Route 52 up Walker Mountain toward Bland County.

Dunagan got back into his vehicle and pursued the defendant. Almost a mile from Bland County, as Dunagan rounded a curve, he saw that Foote had pulled his truck over to the side of the road and had opened his door. Dunagan stopped his own car approximately twenty to thirty yards behind Foote's vehicle. Foote jumped out of his truck with a gun in his hand, ran several steps toward Dunagan's vehicle, squatted down in a combat stance, and raised his weapon in the direction of Dunagan's vehicle. At that point, Dunagan fired two shots through his own windshield at Foote.

Dunagan could not see through his spiderwebbed windshield. He looked out of his vehicle and Foote fired at him. Dunagan fell over into the passenger's seat, and when he looked again, he saw Foote still in a combat type stance holding the gun out in front of him. Dunagan saw Foote's gun recoil, so he fired another two times through the windshield and ducked back down. When he looked again, Dunagan saw Foote charging his vehicle, so he fired five more consecutive shots. Dunagan fired a total of nine shots through his windshield. Foote had fired twice during this confrontation. Foote then ran back to his truck and continued driving north. Dunagan pursued him up the mountain. As Dunagan rounded another curve, he saw Foote driving back toward him aiming a weapon out the window.[1] As their vehicles passed, Dunagan fired once at Foote, who returned fire once.

Dunagan radioed to uniformed police officers who had responded to the area of the conflict that shots had been fired and that Foote was headed back down the mountain. The officers parked their vehicles along the shoulder of the road and took cover behind them. Moments later, Foote's truck rounded the curve and stopped in the middle of the road between the two police units, at which time Foote was apprehended.

Foote is an honorably discharged Vietnam veteran who was involved in heavy combat in Vietnam and who, at the time of this incident, was suffering from post-traumatic stress disorder created by the events he experienced during his military service.

---

[1] The record does not explain why Foote returned down the mountain. It contains no evidence that Foote did so with the intent to resume combat. Indeed, the fact that he did not fire until after Dunagan fired at him would tend to belie such a desire.

■ When reviewing the sufficiency of evidence supporting a conviction, this Court must view "the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Beck v. Commonwealth*, 2 Va. App. 170, 172, 342 S.E.2d 642, 643 (1986).

The appellant contends that he was illegally arrested and that he was entitled to use a reasonable amount of force to repel the assault upon him. He contends that the arrest was unlawful because the police officer did not comply with former Code § 19.2-81 authorizing certain officers to make an arrest without a warrant provided "such officers are in uniform, or displaying a badge of office" [and] "such officers may arrest . . . persons duly charged with a crime in another jurisdiction upon receipt of a photocopy of a warrant, telegram, computer printout, facsimile printout, a radio, telephone or teletype message, in which . . . shall be given the name or a reasonably accurate description of such person wanted, the crime alleged and an allegation that such person is likely to flee the jurisdiction of the Commonwealth."[2]

The Commonwealth asserts that the Court need not consider Dunagan's first contact with Foote, stating that, clearly, the convictions were not based upon Foote's initial resistance to or flight from Dunagan's attempt to apprehend him. The Commonwealth contends that Foote escaped from Dunagan's initial attempt to apprehend him, but he was not thereafter entitled to become the aggressor. Since Foote thereafter became the aggressor, the Commonwealth argues that the theory of self-defense is not available to him.

■ The unlawfulness of the attempted arrest is determined by Code § 19.2-81. When interpreting a statute, the courts have a duty to give full force and effect to every word thereof. *See, e.g., Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984); *Norwood v. City of Richmond*, 203 Va. 886, 891, 128 S.E.2d 425, 429 (1962); *Tilton v. Commonwealth*, 196 Va. 774, 784, 85 S.E.2d 368, 374 (1955); *Fairfax County v. City of Alexandria,*

[2] Code § 19.2-81 was amended in 1988.

193 Va. 82, 92, 68 S.E.2d 101, 107 (1951).

Code § 19.2-81 enumerates the specific requirements necessary to empower a police officer to make a warrantless arrest. Dunagan's attempted arrest of Foote was unlawful for two reasons. First, when making a warrantless arrest, a police officer must be in uniform or display a badge. Former Code § 19.2-81 states, in pertinent part: "[T]he sheriffs of the various counties and cities, and their deputies . . . , provided such officers are *in uniform, or displaying a badge* of office, may arrest, without a warrant, . . . any person whom he has reasonable grounds or probable cause to suspect of having committed a felony not in his presence." (emphasis added). By wearing a uniform or displaying a badge, an officer gives the arrestee notice that he is dealing with an official person. Since a person has the right to resist an assault or threatened assault by a non-official person, it is important that the arrestee knows he is dealing with an officer. *See Love v. Commonwealth*, 212 Va. 492, 495, 184 S.E.2d 769, 772 (1971).

When an arrestee knows that he is dealing with an officer, he then has the opportunity to submit peacefully to his authority. In this case, Deputy Sheriff Dunagan was neither in uniform nor did he display his badge. Moreover, he was driving an unmarked car and was casually dressed, providing Foote with no indicia of his official status. There was no way for Foote to determine whether Dunagan was an officer. By not being put on notice of Dunagan's official status, Foote was not given the opportunity to submit peacefully to Dunagan's authority. Former Code § 19.2-81 mandates that officers put an arrestee on notice of their official status to prevent situations similar to this case. Since Dunagan was not in uniform and failed to display his badge, his attempted arrest of Foote was unlawful.

Dunagan's attempted arrest was also unlawful because the radio transmission upon which he relied was insufficient. Former Code § 19.2-81 states in pertinent part:

[O]fficers may arrest, without a warrant, persons duly charged with a crime in another jurisdiction upon receipt of . . . a radio . . . message . . . [which gives] *the name or a reasonably accurate description of such person wanted, the crime alleged and an allegation that such person is likely to flee the jurisdiction of the Commonwealth.* (emphasis

added).

Three conditions are necessary to empower a police officer to effectuate a warrantless arrest of persons charged with a crime in another jurisdiction. An officer must be given the name or a description of the person wanted, a description of the crime and an allegation that such person is likely to flee the Commonwealth. The radio transmission informed Dunagan that the driver of the vehicle was wanted, that he should use caution, and that the driver was a "Rambo-type" suspect. This transmission does not meet the statutory requirements. It contained no allegation that Foote would likely flee the Commonwealth nor did it describe the alleged crime Foote had committed.[3] Most importantly, there was no description of the person wanted. The radio transmission simply stated that the driver was wanted. This is not a description. Anyone could have been driving the truck. Ownership of the vehicle does not imply that the owner is the driver of the vehicle at any particular moment. A reasonably accurate description should address gender, race, age, height, weight, hair color, and any unique characteristics. Since the radio transmission was insufficient, Dunagan's attempted arrest of Foote was unlawful. In a case such as this, the good faith of the arresting officer is not a factor. No evidence indicates that Dunagan was acting other than in good faith in failing to display his badge or in believing that the radio transmission was sufficient.

Since a person has the right to resist an unlawful arrest, the next issue to be determined is whether Foote used reasonable force to repel his unlawful arrest. The rules of self-defense determine whether the force used was reasonable.

■■■■■ In Virginia, homicide (or attempted homicide) in self-defense is classified either as justifiable or excusable. Justifiable self-defense arises when the defendant is completely without fault. *Perkins v. Commonwealth*, 186 Va. 867, 876, 44 S.E.2d 426, 430 (1947). In such a case, the defendant need not retreat, but is permitted to stand his ground and repel the attack by force, including deadly force, if it is necessary. *McCoy v. Commonwealth*, 125 Va. 771, 775, 99 S.E. 644, 645 (1919). Excusable self-defense arises when the defendant, who was at some fault in precipitating the

---

[3] The record does not show that Foote was wanted by the authorities and, therefore, no guilty knowledge or fault can be ascribed to him in this regard.

difficulty, abandons the fight and retreats as far as he safely can before he attempts to repel the attack. *Id.* at 776, 99 S.E. at 646.

In this case, the rules of justifiable self-defense are applicable since Foote was completely without fault in precipitating the confrontation. On a desolate, dead-end, dirt road, Foote pulled his vehicle up to Dunagan's unmarked parked car and asked Dunagan if he was a property owner in the area. Dunagan responded that he was. Seeing both of Foote's hands on the steering wheel, Dunagan jumped out of his car, pointed a gun directly at Foote, stated that he had reason to believe he was wanted, and requested to see some identification. The Commonwealth argues that this was only a request for identification but we conclude that it was much more threatening. Lt. Stallard testified that he received a call through the dispatcher that Dunagan was attempting to stop the vehicle and place the subject under arrest. Dunagan confronted Foote with a drawn gun with no indicia of authority, in violation of former Code § 19.2-81. We find that Officer Dunagan, by acting unlawfully, was the aggressor in the situation and the person who was at fault.

The Commonwealth argues that the circumstances of the confrontation can be broken down into three separate and distinct events: the period when Foote refused to show Dunagan any identification and fled; the period when Foote pulled his truck to the side of the road and the multiple shooting incident occurred; and the period when the vehicles passed each other with each driver firing one shot at the other. On this assumption, the Commonwealth contends that Foote was at fault and the aggressor during the second incident since he initiated the confrontation by pulling off to the side of the road, waiting for Dunagan. We disagree with this reasoning. The circumstances do not describe separate and distinct events, but one continuing chain of circumstances. After Foote fled, Dunagan pursued him. When Foote pulled to side of the road, this was not a new incident, but a continuing resistance to Dunagan's continuing pursuit and attack.

Foote, being without fault, did not have a duty to retreat. He was entitled to stand his ground and repel Dunagan's attack. Initially, Foote chose to flee. However, when Dunagan continued to pursue him and Foote's flight proved to be to no avail, Foote pulled to the side of the road and confronted Dunagan. Foote had the right to stand his ground and his initial flight in no way dimin-

ishes this right.

■ A number of recent cases from various jurisdictions have applied or recognized the traditional common law rule that a person may resist an unlawful arrest by the use of reasonable force. *See* Annotation, *Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest*, 44 A.L.R.3d 1078 (1972). Foote had the right to repel the attack, but the law of self-defense is the law of necessity. *E.g., McGhee v. Commonwealth*, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978); *Green v. Commonwealth*, 122 Va. 862, 871, 94 S.E. 940, 942 (1918). A person only has the privilege to exercise reasonable force to repel the assault. "The privilege to use such force is limited by the equally well recognized rule that a person 'shall not, except in extreme cases, endanger human life or do great bodily harm.' . . . Moreover, the amount of force used must be reasonable in relation to the harm threatened." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421, 382 S.E.2d 24, 26 (1989). Foote was confronted with deadly force and he used deadly force in return. Further, he fired a total of three shots at Dunagan while Dunagan fired at least ten shots at him. Under these circumstances, Foote was entitled to defend himself and the force used was reasonable as a matter of law.

In summary, Dunagan attempted to make an unlawful arrest and in doing so, was the aggressor and the person who was at fault in the confrontation. Foote had the right to resist the unlawful arrest, and under the principles of justifiable self-defense, he did not have the duty to retreat. Foote had the privilege to use reasonable force in repelling his attacker and since he was confronted with deadly force, it was reasonable under the circumstances for him to use deadly force in return. Accordingly, we find that under the circumstances of this case, self-defense is a complete defense to the charge brought against Foote as a matter of law and that both convictions of attempted murder and the use of a firearm in the commission of a felony must be reversed. The convictions are set aside and the indictments dismissed.

*Reversed and dismissed.*

Coleman, J., and Willis, J., concurred.