COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Coleman and Senior Judge Cole
Argued at Richmond, Virginia


THOMAS ROWE HOPE

MEMORANDUM OPINION[*] BY
v.          Record No. 1340-96-2    CHIEF JUDGE NORMAN K. MOON
                                    APRIL 22, 1997
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
James B. Wilkinson, Judge

Patricia P. Nagel, Assistant Public Defender
(David J. Johnson, Public Defender, on
brief), for appellant.

John K. Byrum, Jr., Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Thomas Rowe Hope appeals his conviction of unlawful wounding in violation of Code § 18.2-51.  Hope argues that the evidence was insufficient to sustain his conviction.  We disagree and affirm.

In December, 1995, Hope was a temporary resident in the apartment of Michael Foster to whom Hope paid fifty dollars a week in rent.  As of December 22, 1995, Hope was in arrears more than one hundred dollars.  On that day, Foster returned home at approximately 5:30 p.m. from a Christmas party where he had consumed three or four beers.  Hope arrived approximately one hour later after having spent the day drinking with some friends.  Hope's and Foster's testimony conflicts substantially as to the

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

events that occurred during the remainder of the evening.

According to Foster, he quarreled with Hope about the rent that Hope owed him before Hope lay down on the floor and fell asleep. Foster testified that at 8:30 or 9:00 p.m., Hope received a telephone call after which he and Foster again argued about the rent. Foster initially informed Hope that Hope would have to leave the next day, but Foster then changed his mind and ordered Hope to leave that evening. Hope refused to leave and Foster pushed Hope, causing him to fall backwards through a partition separating the living room from the bedroom.

Foster testified that he then began searching for his cellular phone, but, unable to find it, he decided to open the front door and to order Hope to leave. Foster had trouble with the lock, turned around, and "met" Hope who was armed with a knife. Hope and Foster struggled, and Foster was stabbed four to five times in the stomach and side and once across the arm. Foster eventually succeeded in disarming Hope, at which point he realized that the bleeding from his arm was severe. Foster told Hope that he believed he was "bleeding to death" and asked him to call 911. Hope did so and undertook first aid measures until the police arrived. Upon their arrival, they discovered Hope and Foster covered in blood and Hope administering first aid to Foster, who was lying approximately six to seven feet from the apartment's front door.

Hope offered a substantially different scenario. Hope testified that after he returned to Foster's apartment on

December 22, 1995, the two did not argue about the rent, but instead, Hope stated that he informed Foster that he was having trouble finding work. They then discussed Hope's plans for relocating to quarters at the Salvation Army. Hope testified that after making a few calls he sat on the couch with Foster, whereupon Foster requested that Hope return his apartment key. Foster acted hostile and according to Hope, unsuccessfully attempted to pick a fight with Hope. Hope then went to sleep on the floor.

Hope awoke to discover Foster kicking him and telling him to "get up." As he attempted to get up, Foster grabbed him and hurled him through a partition into the bedroom. Hope stated that Foster then threatened to kill him and that Foster then ran out of the room and disappeared around a corner. Hope testified, and Foster confirmed, that on a separate occasion several weeks earlier, Foster had threatened a mutual friend with a knife in Foster's apartment and that the friend had fled. Hope stated that he feared Foster might also attack him with a knife and consequently, he ran to the kitchen and grabbed a knife out of the cutting block. Hope testified that he then looked for Foster, in order to make sure that Foster did not sneak up on him. Unable to locate him, Hope headed to the apartment door with the intent of leaving, but found Foster blocking his exit. According to Hope, Foster then charged him and a struggle ensued during which Foster was stabbed several times.

Hope testified that Foster stated "Tommy, I'm cut" and at

that point, he realized that "[Foster] was the friend [he] had always known, he was changed." According to Hope, the two then ceased their struggle, and Hope called 911 and then administered first aid. Hope stated that he dragged Foster to the area near the front door, "because it was a wide open space there."

Subsequently, Hope was charged with feloniously, unlawfully, and maliciously causing bodily injury to Foster in violation of Code § 18.2-51 which provides:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except for where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent of the aforesaid, the offender shall be guilty of a Class 6 felony.

The jury found Hope guilty of the lesser included offense of unlawful wounding, which requires that the Commonwealth prove that Hope acted with the intent to maim, disfigure, disable, or kill, but without malice. See Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 843 (1987).

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Here, the record establishes that Hope armed himself with a knife and went looking for Foster. Upon finding Foster, Hope approached him and whether with the intent of fleeing or maliciously harming him, Hope repeatedly stabbed Foster, who was

unarmed.

Such actions do not constitute self-defense. "A person only has the privilege to exercise reasonable force to repel an assault." Foote v. Commonwealth, 11 Va. App. 61, 68, 396 S.E.2d 851, 856 (1990). Further, the amount of force used must be reasonable in relation to the threatened harm and cannot, except for extreme cases, do serious bodily harm or endanger human life. Id. Holding that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain Hope's conviction for unlawful wounding, we affirm.

Affirmed.