COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bray and Annunziata
Argued at Alexandria, Virginia


ROBERT DEWEY KNOTT

                                    MEMORANDUM OPINION[*] BY
v.          Record No. 2931-96-2    JUDGE RICHARD S. BRAY
                                         APRIL 7, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                       John W. Scott, Jr., Judge

            Martin W. Lester, Deputy Public Defender, for
            appellant.

            Eugene Murphy, Assistant Attorney General
            (Richard Cullen, Attorney General, on brief),
            for appellee.


    A jury convicted Robert Knott (defendant) of voluntary

manslaughter.  At trial, defendant relied upon the theory of

self-defense and argues on appeal that the evidence was

insufficient to support the verdict.  We agree and reverse the

conviction.[1]

    Upon familiar principles, we view the evidence in the light

most favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.  Higginbotham v.

Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  We,

therefore, "'discard the evidence of the accused in conflict with

that of the Commonwealth, and regard as true all the credible

_____

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

[1]We decline to address the remaining issues raised by
defendant on appeal.

evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988) (citations omitted).

The parties are fully conversant with the record and this memorandum opinion recites only those facts necessary to disposition on appeal.

On January 9, 1996, defendant and the victim, Timothy Moore, resided in a homeless shelter located in the City of Fredericksburg. At approximately 11:30 p.m., a dispute arose between defendant and Moore's friend, Joe Chase, and Moore encouraged Chase to fight defendant, offering to ally with him and "kick [defendant's] ass." Moments later, Moore, alone, accosted defendant, "put his hands in front of [defendant's] face" and repeatedly insulted and threatened him. Initially, defendant "just stood there," but "swung" at Moore after Moore spit on both defendant and another resident, Randy Kaufman. Moore, intoxicated[2] and much larger and more muscular than defendant, "swang back," but Kaufman deflected the blows. Moore continued to taunt and challenge defendant, but defendant moved into an adjoining common area, ending the confrontation.

Moore, still enraged, returned to his bed and "beat[] his fists" on the mattress while Chase attempted "to calm him down." Meanwhile, defendant armed himself with a knife from the shelter kitchen, returned to the sleeping area, "went to his bed" and

---

[2]Moore's blood alcohol content tested at 0.22%.

"lay[] down."  Within seconds, a shirtless Moore approached, cornered defendant, "pulled [him] up" from the bed, and declared, "chicken s---'s back; I'm going to kill him."  Defendant resisted, and a struggle ensued, during which defendant stabbed or cut Moore in the chest area.  Moore, however, persisted, wrestling defendant to the floor, holding him "down with his left arm, and . . . punch[ing] him with his other arm."  Defendant then stabbed Moore, but Moore rose to his feet, again declaring to defendant his intention "to kill your ass."  Kaufman intervened, pushed Moore against the lockers, and Moore collapsed, dying shortly thereafter from the several knife wounds inflicted by defendant during the affray.

Defendant testified that he "was losing consciousness" as the fight progressed and "was afraid for [his] life at this point."  Realizing that he "couldn't get out of the situation" or "break the grip of Tim Moore," he "grabbed the knife . . . and . . . poked it at [Moore] hoping that he would release his grip."  Moore, however, "started choking [defendant] . . ., cutting off [his] airway, so [defendant] stabbed him."

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt."  Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citing McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978)).  "Killing in self-defense may be either justifiable or excusable

- 3 -

homicide. 'Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself.'" Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977) (citations omitted).

"The law of self-defense is the law of necessity, and the necessity relied upon must not arise out of defendant's own misconduct. Accordingly, a defendant must reasonably fear death or serious bodily harm to himself at the hands of his victim." McGhee, 219 Va. at 562, 248 S.E.2d at 810. "[W]hether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted." Id. at 562, 248 S.E.2d at 810. "The law does not require a person to suffer the last lethal blow before being able to take up his weapon to defend his life." Smith, 17 Va. App. at 72, 435 S.E.2d at 417. However, "fear alone" is not sufficient for defendant to act; "there must be an overt act indicating the victim's imminent intention to kill or seriously harm the accused," id. at 72-73, 435 S.E.2d at 417 (citing Yarborough, 217 Va. at 975, 234 S.E.2d at 290), and "[a] person only has the privilege to exercise reasonable force to repel the assault." Foote v. Commonwealth, 11 Va. App. 61, 69, 396 S.E.2d 851, 856 (1990) (citations omitted).

Here, the Commonwealth's evidence clearly established that

Moore was the aggressor, repeatedly provoking and intimidating defendant with both verbal and physical assaults.  After defendant and Moore exchanged blows during the initial encounter, defendant withdrew to the common area and, fearful of Moore, armed himself with a knife before returning passively to his bunk.  However, unwilling to abandon his torment of defendant, Moore again angrily attacked, grabbing defendant from his bed, assaulting and repeatedly threatening to kill him.  Such conduct, together with Moore's demonstrated hostility, greater size, intoxication, and violent rage created a reasonable apprehension in defendant of death or great bodily harm.  Under such circumstances, defendant reasonably resorted to deadly force in repelling Moore's attack, resulting in justifiable homicide as a matter of law.

Accordingly, we reverse the conviction.

<u>Reversed and dismissed.</u>