COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Senior Judge Duff
Argued at Richmond, Virginia


TONY MURRAY

MEMORANDUM OPINION[*]
v.   Record No. 1995-97-2          BY JUDGE CHARLES H. DUFF
                                        JULY 14, 1998
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Oliver A. Pollard, Jr., Judge

(Beverly McLean Murray; Paul C. Bland; Law
Office of Paul C. Bland, on brief), for
appellant.  Appellant submitting on brief.

Donald E. Jeffrey, III, Assistant Attorney
General (Mark L. Earley, Attorney General;
John K. Byrum, Jr., Assistant Attorney
General, on brief), for appellee.


Tony Murray appeals his conviction for unlawful wounding.
He asserts that the evidence was insufficient to prove that he
intended to maim, disfigure, disable, or kill his victim.  He
further contends that he met his burden of proving that he acted
in self-defense.  We disagree and affirm.

"Where the sufficiency of the evidence is challenged after
conviction, it is our duty to consider it in the light most
favorable to the Commonwealth and give it all reasonable
inferences fairly deducible therefrom."  Higginbotham v.
Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

So viewed, the evidence proved that on August 18, 1996, Lisa

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Wran was with Murray at her sister's residence where Wran and Murray were consuming alcohol and drugs. Wran admitted drinking four forty-ounce bottles of beer that day, and smoking a substantial quantity of crack cocaine. Wran was in the back bedroom of the residence when Murray entered, and the two began to argue. Murray conceded that he had been angry at Wran earlier that day for talking to other men. Wran testified that she picked up a knife and made approximately three attempts to stab Murray. Murray and Wran began "tussling" over the knife, and eventually he wrested the knife from her. Wran was then questioned as follows:

Q: Oh. He got the knife from you?

A: Uh-huh (yes).

Q: Okay. What happened then?

A: Then he just stabbed me with the knife.

Wran sustained seven wounds to her back, arm, and chest. Murray stabbed her twice in the back, and one of the stab wounds inflicted by Murray to Wran's chest punctured her lung. Wran testified that while Murray was stabbing her, she asked him why he was cutting her, but that he did not answer. Wran tried to escape from Murray, but the bedroom door was locked. She testified that Murray "wasn't holding me. He was just holding the knife."

In response to a question posed to her by the trial court regarding what had happened after Murray started stabbing her,

Wran stated:

> Okay. That I can remember, when he first stabbed me, I didn't really know I had got cut. But, the second time, that's when I was trying to, you know, take the knife or, you know, just struggling with him, you know, to keep from getting cut, you know. That's-- Because I'm left-handed. That's why it only happened on the left-hand side. But after the second or third time, I don't remember, you know. I remember a little bit, but, you know, we were just struggling. I was trying to get away.

Although denying that he stabbed Wran intentionally, Murray admitted that he could not remember what happened after Wran sustained the first stab wound.

To convict a defendant of unlawful wounding, the Commonwealth must prove that the defendant caused bodily injury "with the intent to maim, disfigure, disable, or kill." Code § 18.2-51. "Intent in fact is the purpose formed in a person's mind, which may be shown by the circumstances surrounding the offense, including the person's conduct and his statements." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). The trier of fact may infer an intent to maim, disfigure, disable, or kill based on the defendant's use of a deadly weapon. See Williams v. Commonwealth, 13 Va. App. 393, 395, 412 S.E.2d 202, 203 (1991). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991).

"The common law in this state has long recognized that a

person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault." Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25 (1989). "[T]he law of self-defense is the law of necessity. A person only has the privilege to exercise reasonable force to repel the assault." Foote v. Commonwealth, 11 Va. App. 61, 69, 396 S.E.2d 851, 856 (1990) (citations omitted). "The trier of fact determines the weight of evidence in support of a claim of self-defense." Gardner v. Commonwealth, 3 Va. App. 418, 426, 350 S.E.2d 229, 233 (1986).

Wran testified that Murray stabbed her after he had wrestled the knife from her. He stabbed Wran a total of seven times, including twice in the back. One wound was inflicted with sufficient force that it punctured Wran's lung. Even if we were to accept Murray's testimony that Wran sustained the first stab wound while he was trying to wrest the knife from her, Wran's testimony proved that he continued to stab at her as she was trying to escape.

The evidence not only established that Murray intended to maim, disable, disfigure, or kill Wran, but it also defeats his assertion that he acted in self-defense. Once Murray took the knife from Wran, she no longer posed a mortal threat to him. Moreover, Murray could not reasonably apprehend that Wran posed a threat to him, justifying his continued use of a deadly weapon, as she was trying to escape from the room. The fact that Wran

-4-

sustained two back wounds also tends to belie Murray's assertion that he was merely defending himself.  Accordingly, based on the evidence, the trial court could reasonably reject Murray's self-defense argument.

The trial court believed the Commonwealth's evidence and rejected Murray's evidence.  "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide."  Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).  The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Murray was guilty of unlawful wounding.  Accordingly, the conviction appealed from is affirmed.

Affirmed.

Benton, J., dissenting.

Lisa Wran testified that after she drank four forty-ounce containers of beer and had consumed nine bags of cocaine she began to argue with Tony Murray, who was also drinking beer and "getting high."  During the argument, Wran grabbed a knife and "planned on stabbing [Murray] with it."  She tried "about two or three times" to cut Murray.  Wran testified that Murray began "tussling" and "struggling" with her and "defended himself."  Wran further testified that when she had the knife in her hand, Murray was "trying to take the knife away" and "wasn't going to let [Wran] cut him."  During the struggle, Murray wrestled the knife from Wran.  Wran had no independent knowledge of the number of times she was cut because she did not recall what happened after "the second--third time."  She did not recall because she was "high[ly]" intoxicated during the struggle.

Wran's lack of memory is evidenced in the following responses that she gave to the trial judge's questions:

> THE COURT:  Ms. Wran, I understand what you're saying, the argument, you're drinking, you're using cocaine.  Your argument, you picked up a knife, he took the knife away from you.
>
> THE WITNESS:  Uh-huh (yes).
>
> THE COURT:  And after he first--and you said it was a struggle.  You said after he stabbed you the first time, what I'm asking you, did you continue to struggle?  Were you grabbing for the knife or--  Well, tell me what happened--
>
> THE WITNESS:  The knife that he had?

         THE COURT:  Tell me what you did after he
         started--

         THE WITNESS:  He stabbed me the first time?

         THE COURT:  After he started stabbing you.

         THE WITNESS:  Okay.  <u>That I can remember</u>,
         <u>when he first stabbed me, I didn't really</u>
         <u>know I had got cut.  But, the second time,</u>
         <u>that's when I was trying to, you know, take</u>
         <u>the knife or, you know, just struggling with</u>
         <u>him</u>, you know, to keep from getting cut, you
         know.  That's--  Because I'm left-handed.
         That's why it only happened on the left-hand
         side.  <u>But after the second or third time, I</u>
         <u>don't remember, you know.  I remember a</u>
         <u>little bit, but, you know, we were just</u>
         <u>struggling</u>.  I was trying to get away.

(Emphasis added).

     Murray's testimony is consistent with Wran's testimony.

Murray testified that, when he and Wran were drinking and using

cocaine, they argued.  Wran grabbed a knife and tried to cut him

two or three times.  He testified that he cut Wran during his

struggle to get the knife and that there "was so much confusion

and [Wran] was so wild" while they were "tussling."

     "The common law in this state has long recognized that a

person who reasonably apprehends bodily harm by another is

privileged to exercise reasonable force to repel the assault."

<u>Diffendal v. Commonwealth</u>, 8 Va. App. 417, 421, 382 S.E.2d 24, 25

(1989).  No evidence in this case proved Murray used unreasonable

force when he repelled Wran's assault and wounded her.  Wran's

own testimony proved that she attacked Murray with a knife and

tried to cut him several times.  Wran's testimony also clearly

                              -7-

proved that she and Murray were wrestling as Murray tried to disarm her. Because of her high degree of intoxication, Wran could not recall what occurred after she received two or three cuts. Only after Wran was treated at the hospital and was sober did she learn that she had been cut seven times.

Although Wran cannot recall what occurred after the second or third cut, the majority concludes that Murray was the aggressor. The inferences upon which that conclusion is based are all speculative. No evidence permits the inferences that when Wran was cut, Murray had successfully defended himself, was out of danger, and then embarked on an aggressive course of violence toward Wran. That hypothesis is pure speculation. When "[t]he circumstances do not describe separate and distinct events, but one continuing chain of circumstances," neither the trial judge nor this Court can assume that a person who defends himself from an unlawful attack was the aggressor. Foote v. Commonwealth, 11 Va. App. 61, 68, 396 S.E.2d 851, 856 (1990).

Wran initially aggressively attacked Murray with a knife. When Wran attacked Murray, she was angry and highly intoxicated. Wran's testimony that she twice attempted to cut Murray while angry and intoxicated, tended to prove, as Murray testified, that Wran wildly attacked Murray. Indeed, all the evidence proved that a struggle occurred as Murray attempted to repel Wran's assault and secure the knife. "The law of self defense is the law of necessity." McGhee v. Commonwealth, 219 Va. 560, 562, 248

-8-

S.E.2d 808, 810 (1978). To protect himself from harm, Murray unavoidably had to struggle with Wran to disarm her. It was during that struggle that Wran was wounded. No evidence proved Murray had any reasonable avenue to escape other than trying to wrestle the knife from Wran. Thus, the evidence was insufficient to prove Wran was cut except accidentally or while Murray was defending himself.

Furthermore, Wran's inability to recall what happened as the struggle progressed deprived the trier of fact of any proof that Wran's wounds were inflicted by Murray with the "intent to maim, disfigure, disable, or kill." Those elements must be proved beyond a reasonable doubt to sustain a conviction of unlawful wounding under Code § 18.2-51. See Boone v. Commonwealth, 14 Va. App. 130, 132-33, 415 S.E.2d 250, 250-51 (1992). Even if we disregard Murray's testimony that Wran "was so wild" during the struggle, Wran's own testimony proved that she was highly intoxicated, tried to cut Murray several times, and struggled with him as he tried to defend himself. Because Wran was so highly intoxicated, she could not recall the details of the ensuing struggle. The principle is long standing that "[t]he guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence." Cameron v. Commonwealth, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970).

Because the facts are not inconsistent with the hypothesis

that Murray wounded Wran in his struggle to disarm and defend himself from her attack, I would reverse the conviction.