UNITED STATES of America

v.

Tommie M. MOORE.

No. Cr. 49–71–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Nov. 4, 1971.

Michael Rhine, Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Thomas J. Harlan, Jr., Norfolk, Va., for defendant.

MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

This is an appeal from the United States Magistrate from his judgment on March 16, 1971, wherein the defendant was found guilty of simple assault, 18 U.S.C., section 113(d). Charges for interfering with the police, section 18.1–254 of the Code of Virginia, and disorderly conduct, section 18.1–310 of the Code of Virginia, were merged with a resultant finding of guilt. Fines of $50.00 were imposed on each charge, or a total fine of $100.00.

The occasion giving rise to these charges occurred at 309 Allen Street, Benmoreell, a Government-owned and operated housing project adjacent to the Naval Operating Base, Norfolk, Virginia.

About 5:00 p. m. on February 11, 1971, the husband of the defendant, Chief Petty Officer Jethro Moore, became involved in an alleged assault with a neighbor. The latter reported the matter to the Naval Base police. The police went to the neighbor's house and obtained factual information as to the alleged assault. The alleged assault was not committed in the presence of any arresting officer and all the officers knew about the matter was what the victim said. There was no attempt to investigate.

Sergeant Rounsville of the Naval Station Special Police Force went to Moore's home, accompanied by Patrolman Lawrence. Rounsville was permitted to enter the home, but Lawrence was not. Rounsville explained the charge and Moore admitted hitting the neighbor. Some words were exchanged and Moore requested Rounsville to leave. The latter then reported the incident to other officers and, within a few moments, six or seven police were on hand. Apparently a "wagon" to take Moore into custody was brought to the home by Rounsville and Lawrence.

When the other officers approached the front door, the screen door was locked. While this is referred to as "barricading," it was nothing more than any resident would do in the community. In the interim Lt. Simpson, the Duty Officer of Navy Public Works Center in charge of the housing project, was contacted. He authorized the police to enter the quarters at 309 Allen Street for the purpose of "apprehending" Moore. He predicated his authority on the fact that the leases to tenants contained a clause giving the Public Works Center authority to enter quarters and, as Duty Officer, he exercised this authority. While the lease is not in evidence, it is abundantly clear that the exercise of such authority is not permitted for the purpose of "apprehending" a resident of the household for a charge of simple assault not committed in the presence of an officer and based solely upon a complaint from another individual who has not appeared before a judicial or quasi-judicial officer.

Before Simpson exercised his purported authority, Moore had advised Rounsville that he, Moore, was willing to follow the officers in his own vehicle, but that he was unwilling to be "thrown in the truck and dragged off." Moore had apparently had something to drink, but there is no suggestion that he was unable to operate his own automobile with safety.

When Simpson arrived in uniform, Moore released the latch on the screen door. Detective Dolan took one step into the house and grabbed Moore. Other officers then likewise took hold of Moore and handcuffed him. He resisted, but the officers were successful in taking him to headquarters in the "wagon."

■■ After Moore was grabbed by Dolan, the defendant, Moore's wife, attempted to free him by grabbing Dolan's arm or wrist. Dolan sustained a minor laceration during the tussle. There is no suggestion that the defendant struck Dolan in the face or body, other than her efforts to pull Dolan's arm away from her husband. She used no more force than was reasonably necessary to resist what appeared to her to be an illegal arrest. One who is illegally arrested may use a reasonable amount of force to repel the assault. Persons in close relationship of affinity or consanguinity may resist an officer in making an unlawful arrest. 6 C.J.S. Assault and Battery §§ 92, 93, pp. 949, 950.

The crux of the case lies in the term "arrest." The military makes no provision for the issuance of warrants of arrest. Their classification of the term "arrest" is that a person is confined according to a specific order or otherwise to a defined area. 10 U.S.C., § 809(a). However, it is also said that confinement is "the physical restraint of a person," and Chief Moore was certainly physically restrained at the time the defendant acted. The military uses the word "apprehension" for the purpose of taking a person in custody. 18 U.S.C., § 807. However, the Manual provides for "apprehension, if necessary." Patently the acts of the officers effecting the "apprehension"—the full equivalent of an "arrest" in civilian life—was not only unnecessary, but it was unwarranted. Moore at all times was willing to go to headquarters on his own. He had not committed a major crime and was not fleeing from justice. He was not on actual duty at the time. He was residing in his Government-assigned quarters where he had a right to be. On such a minor complaint of a simple assault

upon a neighbor, if Naval Base police have the authority to break into a man's house, it raises serious constitutional questions. It could be argued that the same force could be used as to one crossing the grass where such action is prohibited. We need not, however, reach this point as we merely hold that this so-called "apprehension" was illegal as far as the defendant was concerned in that it was wholly excessive and unnecessary under all the facts and circumstances.

We think that the criminal responsibility of the wife, the defendant herein, must be gauged by her actions under civil law. To charge her with the knowledge of the Uniform Code of Military Justice and the fine distinctions between "apprehension" and "arrest," including whether she had the right to use reasonable force to resist, would not be compatible with the administration of justice. Since she did not strike Dolan, but confined her efforts to an attempt to pull his arm away from her husband, we must conclude that she used no more force than was reasonably necessary.

The legality of an "apprehension" of Chief Moore is not an issue in this case.

Accordingly, the judgment of the United States Magistrate is reversed, and the defendant, Tommie M. Moore, is found not guilty.

It is noted that the United States Magistrate appointed counsel for the defendant under the Criminal Justice Act. The alleged violation of 18 U.S.C., § 113(d) is a petty offense and no appointment may be made under the Criminal Justice Act. However, the prosecutions under the Assimilated Crimes Act, §§ 18.1–254 and 18.1–310 of the Code of Virginia, are defined as "misdemeanors" for which no specific punishment has been fixed and, therefore, § 18.1–9 of the Code of Virginia is applicable which reads as follows:

"A misdemeanor for which no punishment or no maximum punishment is prescribed by statute shall be punished by fine not exceeding one thousand dollars *or confinement in jail not exceeding twelve months,* or both, in the discretion of the jury or of the court trying the case without a jury."

Thus it appears that court-appointed counsel may apply for compensation under the Criminal Justice Act for representing the defendant on the two state charges brought under the Assimilated Crimes Act, and the Clerk should clearly reflect this fact in forwarding the voucher for payment as these charges are "minor offenses" punishable by more than six months.