**Richmond**

OTTIE BERNARD POLK

v.

COMMONWEALTH OF VIRGINIA

No. 1413-85

Decided August 4, 1987

COUNSEL

Stephen C. Gregory, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.** — Ottie B. Polk was convicted in a bench trial of obstructing justice by threats or force in violation of Code § 18.2-460(A).[1] He was sentenced to six months in jail, with five months suspended, and fined $100. On appeal, Polk argues that: (1) the evidence was insufficient to support his conviction because words alone will not support a conviction under Code § 18.2-460(A), and because there was no evidence of his criminal intent; and (2) he was entitled to use reasonable force to resist arrest, under the authority of *United States v. Moore*, 332 F. Supp. 919 (E.D. Va. 1971). We affirm Polk's conviction, finding that his verbal threat

---

[1] Code § 18.2-460(A) provides: If any person, by threats, or force, knowingly attempts to intimidate or impede a judge, magistrate, justice, juror, witness, or any law-enforcement officer, lawfully engaged in his duties as such, or to obstruct or impede the administration of justice in any court, he shall be deemed to be guilty of a Class 1 misdemeanor.

to kill was sufficient to constitute an obstruction of justice under Code § 18.2-460(A), that there was sufficient evidence of his criminal intent, and that *Moore* is inapplicable because it did not interpret Code § 18.2-460(A), and unlike the facts presented here, it dealt with an apparently illegal arrest.

## I.

At trial, the evidence showed that Polk was stopped pursuant to a license "checking detail" operated by the Lancaster County Sheriff's Department and the Virginia State Police. Deputy Sheriff Martin Shirilla effected the stop. Upon realizing that he had stopped Polk about one year earlier concerning "some discrepancy about his driving status," Shirilla radioed to his dispatcher to confirm the status of Polk's license. The dispatcher informed Shirilla that Polk's license was suspended, and that there was an outstanding bench warrant for Polk's arrest on a charge of failing to appear in court. Based on this information, Shirilla arrested Polk.

Shirilla testified that, at the time of the arrest, Polk threatened to sue him for false arrest and further stated: "If I lose, I'll get you some other way." Polk was handcuffed, placed in Shirilla's vehicle, and transported to the Lancaster County Sheriff's office where Shirilla served him with the failure to appear warrant. Shirilla testified that while they were awaiting the arrival of a magistrate, Polk continually repeated statements such as "I'm going to get you," and "I'm going to get even." Shirilla testified that he then read Polk his *Miranda* warnings and asked him: "Are you talking civil suit or are you looking for a piece of my ass?" According to Shirilla, Polk only responded: "I'm going to get you."

When the magistrate arrived, Shirilla left the booking room to talk to him. Deputy Casto, who had assisted Shirilla in Polk's arrest, remained with Polk in the booking room. Casto testified that after Shirilla left the room, Polk stated that he was going to kill him. Casto concluded that Polk was referring to Shirilla. When Shirilla returned, Casto apparently related this threat to Shirilla. Shirilla testified that based on his conversation with Casto, he obtained a warrant charging Polk with obstruction of justice.

According to Shirilla, a final threat occurred after Polk had been charged with the obstruction offense. The threat occurred when Polk was issued jail clothing and was being taken to the

shower. Shirilla testified that at that time he heard Polk say: "I've got five friends to help me take care of him."

During the entire sequence of these events, neither Shirilla nor Casto observed Polk make any physically threatening gestures or possess any weapons. On cross-examination, Shirilla acknowledged that, except for the verbal exchanges, the arrest proceeded in a normal fashion.

It was later learned that Polk's license was not, in fact, suspended at the time of his arrest, and the failure to appear charge had already been disposed of. Polk testified in his own behalf. He denied having threatened to kill Shirilla, although he admitted saying that he would sue him. Polk specifically denied making a comment about having five friends who would "get" Shirilla. Polk testified that he did not even have five friends. No other witnesses were called by the defense.

In finding the defendant guilty, the court stated:

> There's no question in the mind of this court about the extent of his threats and the language that he used and I feel that he is guilty in violating the law, in violating the statute of obstructing an officer in the discharge of his duties, and . . . so find him guilty.

## II.

Polk first challenges the sufficiency of the evidence. He contends that the Commonwealth failed to prove: (1) that his words alone constituted an attempt to intimidate or impede within the meaning of Code § 18.2-460(A); and (2) that he actually intended to intimidate or impede Shirilla.

Initially, we reject Polk's argument that words alone cannot constitute a violation under Code § 18.2-460(A) without evidence that they caused fear or apprehension in the recipient, or delay in the legal process. The plain language of Code § 18.2-460(A) provides that *threats* constitute a violation of the statute when they are knowingly made in an attempt to intimidate or impede law enforcement officers who are performing their duties. Thus, it is the threats made by the offender, coupled with his in-

tent, that constitute the offense. The resulting effect of the offender's threats, such as fear, apprehension, or delay, is not an element of the crime defined in Code § 18.2-460. By the express terms of the statute, it is immaterial whether the officer is placed in fear or apprehension. The offense is complete when the attempt to intimidate is made. Where a statute contains language which has a definite and precise meaning, and is expressed in clear and concise terms which manifest the intent, courts must adopt that plain meaning. *Miller v. Commonwealth*, 172 Va. 639, 648, 2 S.E.2d 343, 347 (1939). We, therefore, conclude that Polk's statement that he would kill Shirilla was a threat as contemplated by the statute.

■ We disagree with Polk's contention that the Supreme Court's decision in *Jones v. Commonwealth*, 141 Va. 471, 126 S.E. 74 (1925), cited with approval in *Love v. Commonwealth*, 212 Va. 492, 184 S.E.2d 769 (1971), is contrary to our interpretation of Code § 18.2-460(A). Polk directs our attention to the following language in *Jones*:

> To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to "obstruct" ordinarily implies opposition or resistance by direct action and forcible or threatened means. It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed.

*Id.* at 478-79, 126 S.E.2d at 77. In *Jones*, the accused was charged with violating former Code § 55-C, what was known as the Mapp Prohibition Law (1918 Va. Acts, Chapter 388). That statute provided:

> Any person who shall hinder or obstruct any officer of this state charged with the duty of inspecting baggage for ardent spirits . . . shall be deemed guilty of a misdemeanor.

This statute required actual hinderance or obstruction of the officer. The definition of "obstruction" cited above included the requirement of opposition or resistance by direct action. In contrast, Code § 18.2-460(A) provides that an attempt to intimidate or im-

pede by threats, in itself, constitutes a substantive offense. Since *Jones* involved a statute requiring actual "obstruction," it is not applicable here. Code § 18.2-460(A), in contrast, is violated when, by threats or force, one *attempts* to intimidate or impede a law enforcement officer.

We also disagree with Polk's contention that the Supreme Court's holding in *Love* is contrary to our interpretation of Code § 18.2-460(A). In *Love*, the Supreme Court did not address whether words alone could constitute an attempt to intimidate or impede. In that case, the accused confronted police officers with a shotgun when they attempted to serve an arrest warrant on him. In finding that the accused had clearly attempted to impede and obstruct an orderly arrest, the court was not required to resolve whether words alone can constitute a violation of the statute.

Polk also argues that since he was under arrest and in custody when he made his threat to kill Shirilla, he could not have performed a direct ineffectual act toward the commission of the offense, and therefore, no attempted crime was completed. This argument, however, confuses an attempt to commit a substantive offense with the substantive offense defined in Code § 18.2-460(A). As defined in that section, threats knowingly made in an attempt to intimidate or impede constitute the offense. There is no overt act requirement, as such, contained in the statute.

We turn now to consider Polk's claim that there was insufficient evidence of his criminal intent. Specifically, he argues that the evidence does not show that he actually intended to intimidate or impede Deputy Shirilla. In reviewing this claim, we examine the evidence presented in the light most favorable to the Commonwealth, and accord to the evidence all reasonable inferences fairly deducible therefrom. *Crumble v. Commonwealth*, 2 Va. App. 231, 233, 343 S.E.2d 359, 361 (1986).

Intent is the purpose formed in a person's mind which may be shown by his statements or conduct. *Johnson v. Commonwealth*, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968). We find that the trier of fact was entitled to conclude that Polk threatened to kill Shirilla, *Coppola v. Commonwealth*, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), *cert. denied*, 444 U.S. 1103 (1980), and that this threat made by Polk to Shirilla demonstrated his intent to intimidate Shirilla from completion of the post-arrest process-

ing. For this reason, we hold that the evidence presented was sufficient to establish Polk's criminal intent.

### III.

Finally, Polk argues that he was entitled to use reasonable force to resist arrest. In support of his argument, he relies exclusively on *United States v. Moore*, 332 F. Supp. 919 (E.D. Va. 1971). In *Moore*, the accused grabbed the arm of an officer who was in the process of arresting her husband for simple assault. The court held that she was not criminally liable for this conduct, and emphasized that the arrest appeared unlawful to the wife because she did not know the difference between an "arrest" and an "apprehension" under the Uniform Code of Military Justice. *Id.* at 921. In *Moore*, the court also emphasized the fact that unnecessary force was used in effecting the husband's arrest. *Id.* at 920.

We believe that the *Moore* decision is inapplicable to the case at bar. First, although Polk argues that he was entitled to use reasonable force to resist arrest, he does not contest that he was lawfully arrested based upon the information given Shirilla by his dispatcher. Instead, he contends that since, contrary to the information received by Shirilla, his license was not suspended and there was no pending failure to appear charge, he was entitled to offer reasonable resistance. We disagree. An individual is not entitled to resist a lawful arrest. *West Virginia v. Jarvis*, 310 S.E.2d 467, 470 (1983); *see Wright v. Bailey*, 544 F.2d 737, 739-40 (4th Cir. 1976). Further, Polk does not argue, and the record does not show, any use of unnecessary or unreasonable force by the officers making the arrest. Therefore, we reject Polk's argument that he was entitled to use reasonable force under the authority of *Moore*.

In summary, we find that words alone may constitute an offense under Code § 18.2-460(A) when the words are threats knowingly made in an attempt to intimidate or impede law enforcement officers who are performing their duties; that the evidence was sufficient to demonstrate Polk's criminal intent; and that Polk cannot avoid criminal liability for his actions under the authority of *Moore*. Accordingly, we affirm his conviction.

*Affirmed.*

Baker, J., and Benton, J., concurred.