**Lauren GRAHAM, Plaintiff,**

v.

**C. GAGNON, et al., Defendants.**

**Case No. 1:14–cv–872.**

United States District Court, E.D. Virginia, Alexandria Division.

Signed May 6, 2015.

---

Victor Michael Glasberg, Victor M. Glasberg & Associates, Alexandria, VA, for Plaintiff.

Julia Bougie Judkins, Bancroft McGavin Horvath & Judkins PC, Fairfax, VA, for Defendants.

## ORDER

T.S. ELLIS, III, District Judge.

At issue in this 42 U.S.C. § 1983 action is whether defendants, Officer Clark Gagnon and Detective Jannie Clipp of the City of Falls Church Police Department ("FCPD"), had probable cause to arrest plaintiff Lauren Graham for obstruction of justice, in violation of Va.Code § 18.2–469. Defendants have moved for summary judgment on the ground of qualified immunity given that defendants arrested plaintiff pursuant to a facially valid warrant. Plaintiff, for her part, argues that qualified immunity should not apply and that she is entitled to summary judgment on the issue of liability because the undisputed facts show that defendants arrested her without probable cause in violation of the Fourth Amendment. Plaintiff has also filed a motion in limine to exclude defendants' proffered expert testimony[1] focusing on whether probable cause existed to arrest plaintiff for obstruction of justice.

## I.

The parties' dispute arises out of events that occurred during the night and early morning of September 16 and 17, 2012. At approximately 10:37 p.m. on September 16, 2012, Mitchell Lee Cannon contacted the FCPD and reported that he had been assaulted by Colby Twinam, plaintiff's son, at a 7–Eleven in Falls Church. Defendant Gagnon was working as a patrol officer at the time and was dispatched to respond to this assault. Gagnon met and interviewed Cannon at the 7–Eleven and made a report

of the incident. Thereafter, Gagnon obtained warrants for Twinam's arrest for assault and battery and destruction of property. Once he had the warrants, Gagnon contacted his supervisor, Corporal Alan Freed, on the radio and requested assistance in serving the warrants and arresting Twinam at 205 Grove Avenue, where Twinam resided with his mother, plaintiff Graham. Detective Clipp and Corporal Freed answered by radio that they would travel to 205 Grove Avenue and assist in Twinam's arrest.

Freed and Clipp were the first to arrive at the Twinam/Graham residence. Clipp went to the front door of the house while Freed went to the side door. There, Freed encountered Twinam sitting on the steps and told Twinam that he needed to come with the police because they had a warrant for his arrest. Twinam did not comply; instead he got up, ran into the house, and shut and locked the door. Freed overheard Twinam call out in the house words to the effect of "mom, the cops are here." Soon thereafter, Freed saw someone come to the side door. Freed told that person that the police had warrants for Twinam's arrest. This person walked away without opening the door, so Freed continued knocking. In the meantime, Clipp was knocking and ringing the doorbell at the front door of the house. The porch was dark except for a very dim porch light.

Plaintiff, apparently awakened by the noise, eventually came downstairs and opened the front door and the front storm door. Clipp told plaintiff that the police had warrants for Twinam's arrest and asked plaintiff to have Twinam step out of the house in order to be taken into custody. Some discussion between Clipp and

1. According to plaintiff's motion, defendants have identified (i) a former prosecutor, (ii) two police experts, (iii) the FCPD Chief of Police, and (iv) a lieutenant and head of Internal Affairs in the FCPD as potential expert witnesses.

plaintiff ensued. Clipp testified that plaintiff insisted on seeing the warrants, which Clipp did not then have as the warrants were in the possession of Gagnon, who had not yet arrived on the scene. Freed eventually joined Clipp at the front door. Both Freed and Clipp said to plaintiff several times that there were warrants for Twinam's arrest and that he needed to come to the front door.

Plaintiff told the officers that she needed to speak with her son and left the front door to go to the kitchen, where Twinam was trying to decide whether to surrender to the police or flee. Before plaintiff left to go speak with Twinam, Clipp, as was her standard practice, put her left foot on the door threshold to prevent plaintiff from closing the door. When plaintiff left the doorway, the door closed on Clipp's foot. There is a dispute as to whether plaintiff shut the door or whether the door simply closed automatically.

When Gagnon arrived at the Twinam/Graham residence, he was told by the other officers that plaintiff was inside the house speaking with Twinam out of the officers' hearing. Plaintiff returned to the front door and told the officers several times that she wanted to speak with her son.[2]

Eventually, Twinam began walking from the kitchen through the pantry area where two dog gates were located. As Twinam climbed over the second dog gate, Gagnon could see him from the front door and perceived that he was turning away from the officers. Accordingly, Gagnon and Freed crossed the threshold of the doorway, entered the house, and took Twinam into custody.

The parties dispute how long it took for these events to occur. Relying on an estimate given by Twinam in his deposition, defendants contend that about fifteen to twenty minutes elapsed between Freed's exchange with Twinam at the side door to the time of Twinam's arrest. Plaintiff contends that from the time she opened the front door in response to the officers' knocking to the time Twinam was arrested, five to seven minutes had elapsed.

After turning Twinam over to the custody of the sheriff at the Arlington County Detention Center, Gagnon appeared before a magistrate seeking a warrant to arrest plaintiff for obstruction of justice. Gagnon related the events as he observed them and what he was aware of based on radio transmissions from Clipp and Freed. Specifically, while en route to the Twinam/Graham residence, Gagnon was told by radio that Twinam had run into the house and shut and locked the door. Gagnon was also told that plaintiff was asking to see the warrants and had refused to open the front door.[3] Notably, Gagnon was not yet aware of, and thus did not disclose, the door-closing incident to the magistrate. The request for a warrant was denied.

2. At oral argument, plaintiff's counsel contended that plaintiff told the officers that she would fetch her son for them and that she returned to the front door several times with "progress reports." Yet, there is no record evidence to support this contention; instead, the undisputed facts simply note that plaintiff told the officers that she needed to talk to her son. It is important to note in this respect that it is the officers' perception and knowledge of the events that is pertinent to the probable cause and qualified immunity questions at issue here. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (holding that the existence of probable cause is analyzed based on "the facts and circumstances within the arresting officers' knowledge").

3. The audio recording of radio communication between Clipp and Gagnon at Defendant's Exhibit 9 shows that Gagnon was told, "They're refusing to open the door, the mom is asking to see the warrant."

Two days later, when Clipp and Gagnon were again together on duty, Gagnon informed Clipp that he had been denied a warrant to arrest plaintiff for obstruction of justice. In response, Clipp expressed surprise and indicated that plaintiff had tried to shut the door on her foot, but was prevented from doing so because Clipp had placed her foot in the doorway. Armed with this new information, Gagnon went to a magistrate on September 19, a magistrate different from the magistrate who had denied Gagnon's initial request for a warrant. There, Gagnon advised this magistrate that he had been denied an arrest warrant on September 17 and then disclosed to this magistrate the same information that he had given the first magistrate, but further explained that he had received new information that plaintiff had tried to shut the door on Clipp's foot. At his deposition, Gagnon could not recall the exact words he used to describe the door-closing incident, but was clear that he said plaintiff "shut," rather than "slammed," the door on Clipp's foot. Gagnon Depo. at 116. The magistrate then issued a warrant for plaintiff's arrest on a charge of obstruction of justice, in violation of Va. Code § 18.2–469.

On the basis of the second magistrate's warrant, plaintiff was arrested outside her home on the afternoon of September 20, 2012. After being brought before a magistrate, she was released on personal recognizance. The charge was later dismissed with prejudice. After pursuing a complaint with the FCPD, plaintiff filed the present action.

## II.

Plaintiff alleges that defendants violated her Fourth Amendment right by arresting her without probable cause for obstruction of justice, in violation of Va.Code § 18.2–469. Defendants contend that there was probable cause to arrest plaintiff and further argue that they are entitled to qualified immunity as the arrest was carried out pursuant to a warrant issued by a neutral magistrate.

 Qualified immunity, an affirmative defense to a § 1983 action, shields government officials from liability for damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In the Supreme Court's words, qualified immunity provides officials with "breathing room to make reasonable but mistaken judgments." *Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011). This is particularly important in the law enforcement context where the ability of officers "to protect the public can be severely hampered ... if their every decision is subject to second-guessing in a lawsuit." *Torchinsky v. Siwinski,* 942 F.2d 257, 261 (4th Cir.1991). Applied properly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

 The analysis of qualified immunity proceeds in two steps: First, courts ask whether the facts, viewed in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right; second, courts ask whether the right alleged to have been violated was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Wilson v. Kittoe,* 337 F.3d 392, 397 (4th Cir.2003). Thus, in the instant case, even if defendants actually lacked

probable cause to arrest plaintiff for obstruction, they may nonetheless be entitled to qualified immunity if their belief that there was probable cause was objectively reasonable. Defendants' objective reasonableness must be assessed "on the basis of information actually possessed by [defendants] at the critical time, or that was then reasonably available to [them]," and "in light of any exigencies of time and circumstance that reasonably may have affected [defendants'] perceptions." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992).

█ Prior to 2009, courts were required to address and resolve both steps of the *Saucier* qualified immunity analysis. Now, as a result of *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), courts may take the steps out of order in light of the circumstances in the particular case at hand. In this case, it is appropriate to consider first defendants' objective reasonableness in arresting plaintiff given that defendants were granted a warrant for plaintiff's arrest by a neutral magistrate.[4] The Supreme Court and the Fourth Circuit have frequently held that "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender,* — U.S. ——, 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012); *Torchinsky v. Siwinski*, 942 F.2d at 262. This presumption flows from the principle that:

> "When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Oth-

erwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates."

*Id.; see also United States v. Leon*, 468 U.S. 897, 921, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination.").

██ To be sure, the presumption of reasonableness that attends the issuance of a warrant by a neutral magistrate may be rebutted where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley*, 475 U.S. at 341, 106 S.Ct. 1092. Given this high threshold, an officer making an arrest pursuant to a warrant is deemed to have acted in an objectively reasonable manner unless:

(i) the warrant is facially defective;

(ii) "the magistrate so obviously erred that any reasonable officer would have recognized the error," *Messerschmidt*, 132 S.Ct. at 1250; or

(iii) the officer seeking the warrant "deliberately or with reckless disregard for the truth made material false statements in his [testimony to the magistrate], or omitted from that [testimony] material facts with the intent to make, or with reckless disregard of whether they thereby made, the [testimony] misleading." *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir.2007).

█ None of these exceptions applies here. Plaintiff has not shown that the instant case is one of the "rare ... circum-

---

4. It is worth noting that in Virginia, magistrates need not be members of the bar or trained lawyers. *See* Office of the Executive Secretary, Supreme Court of Virginia, Department of Judicial Services, Magistrate Manual: Introduction to the Magistrate System of Virginia 1–10–1–11, *available at* http://www.courts.state.va.us/courtadmin/aoc/djs/programs/mag/resources/magman/chapter01.pdf. The record does not disclose the identity of the magistrates involved in this case or whether they were members of the bar.

stances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions." *Messerschmidt*, 132 S.Ct. at 1245.[5] The record discloses no basis to conclude that the warrant is facially defective, nor does plaintiff contend otherwise. Similarly, the record discloses no basis to conclude that Gagnon made materially false statements to the magistrate, either intentionally or with reckless disregard of the truth. Although plaintiff speculates that defendant Gagnon erroneously told the second magistrate that plaintiff had "slammed" the front door on defendant Clipp's foot, courts cannot permit "mere conjecture" such as this "to upset the normal presump-

tions surrounding a warrant's validity." *Torchinsky*, 942 F.2d at 262.[6]

With respect to whether any reasonable officer would have recognized that the magistrate erred in issuing a warrant, plaintiff advances an argument and case law to the effect that the facts and circumstances surrounding her arrest did not amount to probable cause.[7] Simply put, plaintiff contends the magistrate got it wrong. Although this argument is not plainly insubstantial, it is unnecessary to resolve it here, as it cannot be said on this record that the magistrate was so obviously in error that any "reasonable officer would have recognized the error." *Messerschmidt*, 132 S.Ct. at 1250. Mere passive lack of cooperation does not constitute

---

5. *See also Malley*, 475 U.S. at 344–35, 106 S.Ct. 1092 ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.").

6. Unlike federal law, Virginia law does not require officers seeking arrest warrants to do so by way of written declarations or sworn affidavits. *Compare* Va.Code § 19.2–72, *with* Fed.R.Crim.P. 3, 4. No written record of the facts presented to the magistrates exists here. To avoid disputes and uncertainty concerning the factual basis for a magistrate's probable cause determination, jurisdictions should adopt the sensible practice of requiring officers to submit a declaration or affidavit setting forth the factual basis for the warrant application.

7. *See, e.g., Wilson v. Kittoe*, 337 F.3d at 400 (denying qualified immunity in a case involving a warrantless arrest for obstruction of justice where plaintiff merely stood nearby to where an officer was placing another individual under arrest, asked the officer if he could speak with the arrested individual when the officer was done, and peacefully attempted to remind the officer of the arrestee's rights); *Rogers v. Pendleton*, 249 F.3d 279, 291 (4th Cir.2001) (denying qualified immunity in a case involving a warrantless arrest for obstruction of justice where although plaintiff was "stepping in front of [the officer]" and

"getting in his face," the officer "easily could have ignored him" and continued the search of plaintiff's property); *Kee v. City of Hampton*, No. 2597–08–01, 2009 WL 3734053, at *3 (Va.App. Nov. 10, 2009) (finding no obstruction where police officer was able to "ignore[] appellant's protestations, enter[] the premises, walk[] past appellant, and conduct[] the investigation"); *Ruckman v. Commonwealth*, 28 Va.App. 428, 505 S.E.2d 388 (1998) (a person does not commit obstruction where he simply "fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult but does not impede or prevent the officer from performing the task."); *Polk v. Commonwealth*, 4 Va.App. 590, 593, 358 S.E.2d 770, 772 (1987) (holding that verbal threat to kill was sufficient to constitute obstruction of justice because the statement was intended to intimidate the officer from completion of post-arrest processing). Plaintiff points out that defendants admit that they could legally have entered the home at any time to effect the arrest, but chose not to do so because the home was dark and thus posed concerns for officer safety and because the FCPD "frowns" upon entering a house on a misdemeanor warrant without "trying to gain some compliance" first. *See* Pltf.'s Statement of Undisputed Facts ¶¶ 1, 2, 9, 10 (quoting depositions of Gagnon and Police Chief Gavin); *Payton v. New York*, 445 U.S. 573, 602, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

probable cause, whereas active refusal to cooperate, including making active efforts to prevent the arrest from taking place, clearly may amount to obstruction. There is a continuum of behavior from mere passive lack of cooperation to active attempts to prevent an arrest and it is the magistrate's responsibility to determine whether or not the facts and circumstances reported to her fall on the probable cause side of this continuum. Officers cannot be required to second guess a magistrate's judgment unless the mistake is exceedingly clear. *See Raub v. Campbell,* 785 F.3d 876, 881 (4th Cir.2015) ("[A]s we have emphasized repeatedly, [o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.") (quoting *S.P. v. City of Takoma Park, Md.,* 134 F.3d 260, 266 (4th Cir.1998)).

The events at the Twinam/Graham residence were not so clearly passive noncooperation that "no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. 1092. Although failure to cooperate is not necessarily obstruction, *some* failures to cooperate may constitute obstruction of justice if there is an active effort to thwart an arrest. Defendants, it appears, believed that when plaintiff left the front door to speak with her son in the kitchen she was "openly encouraging her son not to cooperate with [them] and come out of the house." Pltf.'s Ex. 5, Gagnon Response to Interrogatories. Given the officers' inability to see or hear plaintiff's conversation, the magistrate's decision was not so obviously in error that defendants should be liable for failing to question her judgment. Most importantly, defendants did not impulsively act on their potentially mistaken view that plaintiff was obstructing justice. Instead, they took the reasonable step of seeking a warrant. Accordingly, defendants were entitled to rely on the judgment of the magistrate and are entitled to qualified immunity.

## III.

Accordingly, for the reasons stated and for good cause,

It is hereby **ORDERED** that defendants' motion for summary judgment (Doc. 30) is **GRANTED** based on defendants' entitlement to qualified immunity.

It is further **ORDERED** that plaintiff's motion for summary judgment on liability (Doc. 33) is **DENIED AS MOOT.**

It is further **ORDERED** that plaintiff's motion in limine (Doc. 35) is **DENIED AS MOOT.**

It is further **ORDERED** that the Clerk is **DIRECTED** to enter judgment in favor of defendants and against plaintiff pursuant to Rule 58, Fed.R.Civ.P.

The Clerk is further directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.