UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Russell and AtLee
Argued at Richmond, Virginia

EDUARDO NICANOR MENDEZ

                                                      MEMORANDUM OPINION* BY
v.        Record No. 0152-18-2              JUDGE WESLEY G. RUSSELL, JR.
                                                      MARCH 12, 2019
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Melvin R. Hughes, Jr., Judge Designate

Bryan Jones for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General; Brittany A. Dunn-Pirio, Assistant Attorney
General, on brief), for appellee.

Eduardo Nicanor Mendez appeals the judgment of the Circuit Court of Albemarle County

convicting him of two counts of felony obstruction of justice in violation of Code § 18.2-460(C).

On appeal, he argues the evidence was insufficient to support his convictions because the threats

he made against a deputy Commonwealth's attorney and an arresting officer did not relate to an

enumerated felony as required by Code § 18.2-460(C). Alternatively, Mendez argues that his

threatening statements to the arresting officer cannot serve as the basis for an obstruction of

justice conviction because the officer "was able to administer justice" in the face of the threat,

and therefore, was not obstructed in the performance of his duties.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." Bolden v. Commonwealth, 275 Va. 144, 148 (2008).

In 2009, Mendez was the victim of a criminal assault in which he suffered "a grievous injury," the effects of which he still suffers. An Albemarle County deputy Commonwealth's attorney (the "DCA") prosecuted Mendez's attacker. Mendez cooperated in the prosecution of his assailant, who ultimately pled guilty to unlawful wounding.

Over the next few years, Mendez repeatedly contacted the DCA, requesting assistance in paying medical bills related to his injury and in obtaining a U-visa. Relevant here, a U-visa is a special class of visa that grants permanent status to individuals who have assisted law enforcement in the prosecution of criminal activity. See 8 U.S.C. § 1101(a)(15)(U). To obtain a U-visa, an applicant's assistance to law enforcement must be certified by a designated official or entity, which includes a prosecutor's office. See 8 U.S.C. § 1184(p)(1). The DCA advised Mendez to contact an immigration lawyer for help in obtaining a U-visa.

Mendez continued to telephone the DCA and to stop by her office asking for help. The Commonwealth Attorney's office received a letter from Mendez's immigration attorney on February 25, 2014 requesting a U-visa certification. On March 10, 2014, the DCA informed Mendez that she was sorry, but her office would not give him the U-visa certification because Mendez was facing criminal charges. According to the DCA, the existence of those charges represented a "legal bar" to Mendez receiving the certification. The DCA informed Mendez that once her office had made a determination regarding a U-visa certification the decision was final. The DCA sent a letter to Mendez's immigration lawyer informing of the office's decision and asking the attorney to instruct Mendez to stop contacting her office.

Despite all of this, Mendez continued to visit the DCA's office and inquire about the U-visa. The DCA told Mendez to stop coming by the office and to stop contacting her or others in the office.

Mendez again went to the DCA's office on April 6, 2015; his presence required deputies to intervene. Mendez returned on April 13 and was waiting in the hallway for the DCA at 8:00 a.m. He was told he was trespassing and not to return. On December 30, 2016, Mendez telephoned the DCA, who was not there to receive the call. Mendez was told not to call her again. Nevertheless, Mendez called and left two voicemail messages shortly thereafter.

Albemarle County Police Detective Wells was assigned to investigate the messages appellant left for the DCA. Wells listened to the messages and according to his trial testimony, Mendez, in a December 30 voicemail, stated: "This is Mr. Mendez; can you please call me back? I don't what - - - know why you don't answer the phone you stupid crazy motherfuckers. Call me back you stupid bitch." In a second message left for the DCA on December 31, Mendez stated,

> [H]ey stupid [DCA], why don't you listen? Why you don't come, you stupid cow, stupid cow, want me to ride it? I'm just - - - it's just cocaine motherfucker, I shoot you and your whole family you piece of shit. You going to court every day, every day, I find you my fucking self, I'm a fucking [inaudible] piece of shit.

At Mendez's trial, the DCA testified at trial that Mendez's threats impeded her ability to "do justice generally" because her job required her to walk from building to building and she had to be escorted everywhere she went. She was concerned due to Mendez's comments that he knew she had to walk to court and that he had been around the area looking for her before, and, at times, even waited for her. She described that she and her family were worried. No evidence was adduced identifying the specific crimes the DCA was attempting to prosecute after she was aware of the messages.

Based on the threats against the DCA, Wells arrested Mendez on January 6, 2017.  As Wells was placing Mendez in another officer's patrol vehicle, Mendez said, "you motherfucker, I'll get you too."  Wells responded by saying "that sounds like a threat," and Mendez replied, "yes it is."  Wells obtained another warrant against Mendez for the threat against Wells.  When asked at trial what effect the threat had on his ability to perform his job, Wells replied that it was "a little unsettling, but nothing major[.]"

Mendez moved to strike the evidence, arguing that it was insufficient to support his two convictions for obstruction of justice in violation of Code § 18.2-460(C).[1]  Specifically, he argued that the evidence was insufficient because the threats he made against the DCA and Wells did not relate to an enumerated felony as required by Code § 18.2-460(C).  Alternatively, Mendez argued that his threatening statements to Wells were insufficient to support a conviction because Wells largely ignored them, and thus, was not obstructed in the performance of his duties.  The trial court denied the motion to strike, finding that the two obstruction charges "sprung" from the original 2009 malicious wounding offense prosecuted by the DCA, and thus, related to an enumerated felony as required by Code § 18.2-460(C).  Furthermore, the trial court found that the threats made to Wells were sufficient to support an obstruction of justice charge.  Having denied the motion to strike, the trial court convicted Mendez of two counts of obstruction of justice in violation of Code § 18.2-460(C).

On appeal, Mendez again argues that the evidence was insufficient to support his convictions for violating Code § 18.2-460(C).  He continues to maintain that the threats he made were not related to an enumerated felony as required to sustain convictions under Code § 18.2-460(C).  Mendez also argues that his statements did not actually obstruct Wells in

---

[1] Mendez also was convicted of one count of threatening an illegal act over a telephone in violation of Code § 18.2-427, but that conviction is not before us on appeal.

the performance of Wells' duties, and thus, no conviction for obstruction of justice could lie for his threats against Wells.

ANALYSIS

I.  Standard of Review

Ordinarily, in considering whether the evidence was sufficient to support a conviction, we "consider[] the evidence in the light most favorable to the Commonwealth . . . and reverse[] the judgment of the trial court only when its decision is plainly wrong or without evidence to support it."  Marshall v. Commonwealth, 69 Va. App. 648, 653 (2019).  When, however, the evidence is undisputed and the sufficiency challenge turns on whether a particular fact or circumstance falls within the ambit of a statute, we are presented with a question of statutory construction that we review *de novo*.  Id.

II.  Code § 18.2-460

Code § 18.2-460, the Virginia obstruction of justice statute, criminalizes efforts to prevent certain specified individuals, including deputy Commonwealth's attorneys and police detectives, from performing their respective duties.  The various subsections of the statute criminalize different methods of such obstruction and impose different penalties for the specific method or manner employed.

Mendez was convicted of violating subsection (C), which provides:

> If any person by threats of bodily harm or force knowingly attempts to intimidate or impede a [covered individual] lawfully engaged in the discharge of his duty, or to obstruct or impede the administration of justice in any court relating to a violation of or conspiracy to violate § 18.2-248 or subdivision (a)(3), (b) or (c) of § 18.2-248.1, or § 18.2-46.2 or § 18.2-46.3, or relating to the violation of or conspiracy to violate any violent felony offense listed in subsection C of § 17.1-805, he is guilty of a Class 5 felony.

- 5 -

In comparison, subsection (B) provides that "[e]xcept as provided in subsection C, any person who, by threats or force, knowingly attempts to intimidate or impede a [covered individual] lawfully engaged in his duties as such, or to obstruct or impede the administration of justice in any court, is guilty of a Class 1 misdemeanor." Recognizing that the subsections could be read as covering the same conduct regarding threats made, the Supreme Court explained the difference between the subsections, holding that, to support a conviction under subsection (C), the threat made must relate to one of the enumerated felonies described in subsection (C). Washington v. Commonwealth, 273 Va. 619, 628 (2007).[2] Accordingly, for Mendez's conduct to have violated subsection (C), his threats against the DCA and Wells had to relate to an enumerated felony.

### III. Relating to an enumerated felony

In support of its contention that Mendez's threats against the DCA and Wells related to an enumerated felony, the Commonwealth contends that all of the threats had their genesis in the DCA's prosecution of Mendez's attacker in 2009. The Commonwealth reasons that absent Mendez's contact and cooperation with the DCA when she prosecuted his attacker, Mendez would not have contacted the DCA regarding the U-visa years later. Similarly, the Commonwealth posits that the threat against Wells is derivative of the threats against the DCA, reasoning that if Wells had not arrested Mendez for threatening the DCA, Mendez would not have had occasion to threaten Wells. In advancing this argument, the Commonwealth argues the statutory phrase "relating to a violation of" is very broad and that the statute's express terms

---

[2] The Supreme Court acknowledged that its conclusion that the "related to" an enumerated felony language modified both the "threats" clause of subsection (C) and the "obstruct or impede" clause of subsection (C) violated rules of English grammar, but nevertheless concluded that such a construction was necessary to implement faithfully the General Assembly's statutory scheme as a whole. Washington, 273 Va. at 627-28.

neither prevent it from being applied to a case in which the charged person was the victim in the underlying prosecution nor place any temporal restriction on its application.

In response, Mendez, conceding that, nominally, the 2009 prosecution involved an enumerated felony,[3] argues that this simply stretches the concept of "relating to" too far. He argues that, *as the victim*, he did nothing to obstruct the DCA in prosecuting his attacker in 2009. To the contrary, the record establishes that he assisted in that prosecution. He argues that any threats against the DCA were made in 2016 and were not related to the 2009 prosecution in any real sense, but rather, were related only to his requests for certification made years later. Similarly, he argues that the causal chain necessary to relate his 2017 arrest for threatening Wells to the 2009 prosecution and conviction of his attacker stretches the statutory language beyond its breaking point.

Although the phrase "relating to" is broad enough to cover a great deal, we agree with Mendez that the Commonwealth's proposed construction of the statute is a bridge too far. As the statutory text makes clear, the overriding purpose of subsection (C) is to prevent the use of threats "to attempt[] to intimidate or impede," Code § 18.2-460(C), a covered individual from carrying out his or her duty *related to an enumerated felony*. See Washington, 273 Va. at 627-28 (holding that the "relating to" language modifies both the threat clause and the obstruction clause of Code § 18.2-460(C)). We conclude that a fair reading of the requirement is that the threat and attempted obstruction have a direct relationship to the enumerated felony. To find otherwise makes it difficult for a citizen to determine the true scope of the statute, with its limits being determined by how gifted a prosecutor is at creating seeming links between distinct events in a

---

[3] Wounding, whether unlawful or malicious, in violation of Code § 18.2-51 is a "violent felony offense [as] listed in subsection C of § 17.1-805[.]" Code § 18.2-460(C).

manner reminiscent of the nursery rhyme "This is the House that Jack Built."[4]  Such a construction leaves the scope of the statute open to such creativity, and the resulting variation runs afoul of the principle that "an accused cannot be punished unless his or her case falls 'plainly and unmistakably within the statute.'"  Washington, 273 Va. at 629 (quoting United States v. Lacher, 134 U.S. 624, 628 (1890)).

Here, there is not a sufficient direct relationship between the threats Mendez made against the DCA in December 2016 and the 2009 felony prosecution.  None of Mendez's threats in 2016 obstructed or impeded anyone in the 2009 prosecution nor could they have.  Certainly, the 2016 threats were not "attempts to intimidate or impede" the DCA in her prosecution of the felony in 2009.  All of the DCA's duties regarding the prosecution were completed in 2009, and nothing that Mendez said or did in 2016 could have obstructed the DCA in the performance of

---

[4] "This is the House that Jack Built" is an English children's poem that pre-dates the American Revolution.  In the poem, which is ostensibly about a house built by Jack, the reader learns almost nothing about Jack or the house that he built.  Rather, starting with a rat eating either malt or cheese that lay in the house, the reader is introduced to a variety of things and characters that are related in some way to each other and, through an ever-longer chain woven by the author, tied in some sense to Jack and his house.  See This is the House that Jack Built, https://en.wikipedia.org/wiki/This_Is_the_House_That_Jack_Built (last visited Feb. 28, 2019).

Known to the founders, the poem was referenced by Thomas Jefferson in a letter discussing a proper understanding of the limits of the Constitution's Necessary and Proper Clause, see Founder's Online, Letter from Thomas Jefferson to Edward Livingston (Apr. 30, 1800) https://founders.archives.gov/documents/Jefferson/01-31-02-0460 (last visited Feb. 28, 2019)), and has been used on multiple occasions by members of the United States Supreme Court to warn that "[c]oncluding that a relation can be put into a verbal formulation that fits somewhere along a causal chain" does not mean that such a formulation brings the object of that formulation within the ambit of a constitutional provision or statute.  United States v. Comstock, 560 U.S. 126, 150 (2010) (Kennedy, J. concurring); see also Fed. Election Comm'n v. Nat'l Conservative Political Action Comm., 470 U.S. 480, 508 (1985) (White, J. dissenting); Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 730-31 (1973); Borden Co. v. Borella, 325 U.S. 679, 685 (1945) (Stone, C.J., dissenting).  We heed that warning here and reject a construction of Code § 18.2-460(C) that does not require a direct relationship between the threat, the obstruction, and the enumerated felony.

her duties with respect to that case.[5] Thus, although the evidence was sufficient to establish that the 2016 threats obstructed and impeded the DCA in the prosecutions she was conducting at the end of 2016 and the beginning of 2017, the evidence did not establish that the 2016 threats represented an attempt to obstruct or impede her regarding the prosecution of the 2009 case.[6]

The Commonwealth next posits that, even accepting that nothing Mendez did was intended to or even could have affected the performance of anyone's duties with respect to the 2009 prosecution, a direct relationship nevertheless exists here. Specifically, the Commonwealth argues that Mendez made the threats because of the denial of his U-visa request, which, in turn, he sought because of his assistance to the Commonwealth in the 2009 prosecution. Essentially, the Commonwealth argues that this leaves the threats just one step removed from the 2009 prosecution, and hence, sufficient to satisfy subsection (C)'s "relating to" element.

Once again, we conclude that the evidence does not establish the direct relationship required by the statute. The U-visa process is, by definition, not a criminal proceeding, let alone a felony proceeding. It is not tied to the enumerated felonies listed in Code § 18.2-460(C); it is a separate and distinct process governed by federal law, and thus, is largely independent of state law definitions. Mendez's request for certification was at most an ancillary proceeding that had

_____

[5] Although the temporal sequence is significant here, we recognize that there may be circumstances when an individual covered by the statute has duties to perform that are directly related to an enumerated felony and arise after a conviction has been rendered. For example, after conviction for an enumerated felony, a law enforcement officer may be charged with the duty of transporting the newly convicted to jail or prison. Depending on the circumstances and the specific evidence adduced, interference with the performance of such duties may fall within the ambit of subsection (C). See Washington, 273 Va. at 628 n.5.

[6] Although it is possible that, in late 2016 and early 2017, the DCA was prosecuting felony cases falling within the definition found in Code § 18.2-460(C) and that Mendez's threats obstructed her in the performance of her duties related to those cases, the Commonwealth offered no evidence to establish that fact. Absent evidence in the record to support a conclusion that the 2016 and 2017 cases handled by the DCA while the subject of Mendez's threats were enumerated felonies, we must assume that they were not.

at best an indirect relationship with the prosecution of his attacker years earlier. Certainly nothing about Mendez's threats after his request for U-visa certification years after the fact can be viewed as an "attempt[] to intimidate or impede," Code § 18.2-460(C), the DCA (or anyone else) in carrying out her official duties regarding the 2009 prosecution.

Furthermore, we note again that the threats against the DCA were made in December 2016. This was nearly two years after Mendez's request for certification had been rejected and he had been informed that the decision was final. Furthermore, based on the DCA's testimony that his pending charges were a "legal bar" that prohibited Mendez from receiving the certification, the DCA and her office had informed Mendez and his immigration representatives that they had no discretion to grant him the requested certification. Given this legal reality, the December 2016 threats could not obstruct or impede the DCA or anyone else in the performance of official duties regarding the U-visa certification, let alone the 2009 felony prosecution.

Given our conclusion that Mendez's threats against the DCA do not have the required direct relationship with the 2009 felony prosecution, it is clear that his 2017 threats against Wells do not satisfy the statutory requirement either. Mendez's interactions with Wells are further removed from the 2009 prosecution than his interactions with the DCA. There is no evidence that Wells was involved in any way in the 2009 prosecution or the events surrounding it. Rather, his entire involvement in the matter was investigating the threats made in late 2016, arresting Mendez in 2017, being threatened by Mendez during that arrest, and testifying at hearings related to the current prosecution. Nothing about Mendez's threats to Wells in 2017 can be read fairly as an "attempt[] to intimidate or impede" Wells in the performance of his duties regarding the 2009 prosecution because, from the record, it appears that Wells had no such duties.

Because the "relating to" requirement is not so elastic as to tie Mendez's threats to the DCA in 2016 and to Wells in 2017 to the 2009 prosecution of his attacker, Mendez's conduct,

abhorrent as it was, does not fall within the ambit of subsection (C) of Code § 18.2-460.

Accordingly, the evidence was insufficient to support his convictions for violating Code

§ 18.2-460(C).

## IV. Code § 18.2-460(B)

Having concluded that the evidence did not establish that Mendez's threats violated

Code § 18.2-460(C), we turn to the question of whether the evidence was sufficient to convict

him of a lesser-included offense, namely Code § 18.2-460(B).[7]  As noted above, the only

substantive difference between the two subsections is that (C) requires that the threats and

obstruction be tied to an enumerated felony while subsection (B) has no such requirement.

Washington, 273 Va. at 628.

Mendez concedes that the evidence was sufficient to establish he violated subsection (B)

with respect to the threats made against the DCA.[8]  There really can be no dispute that his threats

to do her harm while she was walking to court represented "knowing[] attempts to intimidate or

impede" her while she was "lawfully engaged in [her] duties . . . ."  Code § 18.2-460(B).

Additionally, Mendez, citing the DCA's testimony about how the threats affected her

performance, concedes that the evidence established that his threats actually obstructed and

impeded the DCA in the performance of her duties.

---

[7] Mendez correctly conceded at oral argument that Code § 18.2-460(B) is a lesser-included offense of Code § 18.2-460(C).  Although such a concession of law does not bind us, Doulgerakis v. Commonwealth, 61 Va. App. 417, 419 (2013), the Supreme Court's decision in Washington makes clear that subsection (B) is a lesser-included offense of subsection (C). See also Roach v. Commonwealth, 51 Va. App. 741, 750 (2008).

[8] Whether undisputed evidence is sufficient to sustain a conviction is a question of law, Bridgeman v. Commonwealth, 3 Va. App. 523, 528 (1986), and, as noted above, we are not bound by concessions of law made by the parties.  For the reasons stated, however, Mendez correctly concedes this point, and we appreciate his candor.

Mendez makes no such concession regarding his threats against Wells. He argues that the evidence was insufficient to support his conviction because Wells was largely unaffected by them and carried out the arrest in the normal course. According to Mendez, this demonstrates that Wells "was able to administer justice" despite the threats, and thus, he cannot be convicted for violating Code § 18.2-460(B). We disagree.

As the plain text of Code § 18.2-460(B) makes clear, the Commonwealth need not show that Mendez's threats actually prevented Wells from effectuating his arrest. Rather, the evidence only had to demonstrate that Mendez "by threats or force, knowingly attempt[ed] to intimidate or impede a . . . law-enforcement officer . . . lawfully engaged in his duties[.]" Code § 18.2-460(B). Here, there is no dispute that Mendez knowingly made the threat to Wells, who was a law enforcement officer, who was lawfully engaged in his duties when he attempted to arrest Mendez. Given the circumstances of the threat and Mendez's explicit statement confirming that it was a threat, a reasonable factfinder could conclude that Mendez's purpose in making the threat was to "attempt[] to intimidate or impede" Wells in his attempt to arrest him. Accordingly, the evidence was sufficient to establish that Mendez's threats to Wells in 2017 constituted a violation of Code § 18.2-460(B).[9]

---

[9] Mendez contends that our decision in Ruckman v. Commonwealth, 28 Va. App. 428 (1998), requires that, to support a conviction for obstruction of justice, the evidence must show that the covered official was actually obstructed or impeded from performing his or her duties. Ruckman, however, addressed a conviction under Code § 18.2-460(A), id. at 430, not a conviction under Code § 18.2-460(B) or (C). Subsection (A) prohibits one from "knowingly obstruct[ing]" a covered individual "in the performance of his duties." Code § 18.2-460(A). Thus, by its terms, subsection (A) requires actual obstruction, while the requirements of the threats clause of subsections (B) and (C) can be satisfied with evidence of a threat that represents a knowing "attempt[] to intimidate or impede" with no requirement that the attempt succeed. Code § 18.2-460(B) and (C). See Polk v. Commonwealth, 4 Va. App. 590, 594 (1987) (recognizing that, when a statute proscribes threats designed to intimidate or impede an official from carrying out his or her duty, the crime is completed when the threat is made and "[t]he resulting effect of the offender's threats, such as fear, apprehension, or delay, is not an element of the crime").

V.  Remedy

Having concluded that the evidence was sufficient to support convictions for violations of Code § 18.2-460(B) but not Code § 18.2-460(C), we are left with the question of remedy.  In prior instances where Virginia appellate courts have found the evidence insufficient to sustain a conviction under Code § 18.2-460(C) but sufficient to support a conviction under subsection (B), the cases have been remanded for sentencing on the lesser-included offense.  See, e.g., Bishop v. Commonwealth, 275 Va. 9, 16 (2008) (remanding for sentencing under subsection (B) based on the agreement of the parties); Roach v. Commonwealth, 51 Va. App. 741, 750 (2008).

Here, however, Mendez does not consent to such a resentencing.  In Britt v. Commonwealth, 276 Va. 569, 576 (2008), the Supreme Court held that, absent the parties agreeing to remand for the purpose of resentencing on a lesser-included offense, the proper resolution is to remand to the circuit court for a new trial on the lesser-included offense.[10] Accordingly, we remand the matter to the circuit court so that Mendez may be retried for violations of Code § 18.2-460(B) if the Commonwealth be so advised.

CONCLUSION

Threatening violence against anyone is wrong.  Through the statutes it has enacted, the General Assembly has determined that threatening certain public officials as they attempt to perform their official duties is more egregious than the average threat because the threat is made not only against the individual but the office he or she holds as a representative of the people as sovereign.  The factfinder concluded Mendez made these threats; it cannot be seriously disputed that the threats were vile, abhorrent, and criminal.

---

[10] Although the Commonwealth initially sought remand for resentencing on the lesser-included offense, it conceded that such relief was not available given Mendez's lack of consent to same.  Although not bound by the Commonwealth's concession, we appreciate counsel's candor in recognizing the effect of Britt.

Concluding that a particular action is vile, abhorrent, and criminal, however, does not compel the conclusion that the activity violates a specific statute. Here, for the reasons stated above, Mendez's threats and the circumstances surrounding them do not satisfy all of the requirements necessary to support convictions for violating Code § 18.2-460(C). Accordingly, we reverse those convictions and remand the matter to the circuit court for further proceedings consistent with this opinion if the Commonwealth be so advised.

<u>Reversed and remanded.</u>